UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CLIFTON TERRON LEE,

        Plaintiff,   Case No. 1:25-cv-384

v.    Honorable Maarten Vermaat

SHERMAN CAMBELL et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility and the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.

Plaintiff sues MDOC Assistant Deputy Director Sherman Cambell and MDOC "CFA Classification" Laura Heinritz; the following ICF staff: Warden John Davids, Assistant Deputy

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Warden Dennis Cassel, Residential Unit Manager Jeff Luther, and Mental Health Unit Chief David Maranka; and the following MBP staff: Warden Sarah Schroeder, Residential Unit Manager Unknown Johnson, Prison Counselor Marsha Nurkala, and Psychiatrist Unknown Green.[2] (Compl., ECF No. 1, PageID.1–3.)

Plaintiff sues Defendants in their individual and official capacities. (*Id.*, PageID.2–3.)

In Plaintiff's complaint, he alleges that on October 12, 2022, he "was placed in segregation (solitary-like confinement) for fighting." (*Id.*, PageID.4.) Plaintiff states that "at the time," he "was classified as SMI/MMD (Serious Mental Illness and Major Mental Disability)." (*Id.*) Plaintiff alleges that pursuant to MDOC policy, "those classified as SMI/MMD are not to be subjected to long-term segregation." (*Id.*) Plaintiff alleges that contrary to this policy, "he was subjected to long-term segregation" for 7.5 months (4.5 months at ICF and 3 months at MBP), "despite his SMI/MMD diagnoses." (*Id.*, PageID.4, 6.) Plaintiff further alleges that "his long-term segregation approval form was not properly completed" because "[t]here was no signature present on the form and the approval box was not checked." (*Id.*, PageID.4.) Plaintiff claims that this means "the Deputy Director(s) were not properly notified of Plaintiff's placement in long-term segregation" and that "the named Defendants did not have the proper authority to place the Plaintiff in long-term segregation either in ICF or MBP." (*Id.*)

Additionally, Plaintiff states that "the CSJ-33 misconduct sanction assessment form . . . [asks] 'if a prisoner is found guilty of his misconduct, would his/her mental health be [a]ffected by any of the available misconduct sanctions that may be imposed,'" and on October 14, 2022, at ICF, Defendant Maranka "check[ed] 'Yes' in this box, and further stated, '[loss of privileges

---

[2] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

4

(LOP)] is recommended. Long-term segregation may lead to increase in mental health symptoms.'" (*Id.*, PageID.5.)[3]

Plaintiff claims that "the Defendants named as Ionia Correctional Facility employees told the Plaintiff he was 'laid-down' on administrative segregation, as noted on the CSJ-423 security classification notice form, [which] was not authorized by the Deputy Director." (*Id.*) Plaintiff alleges that "the above action did violate [MDOC policy]," which states that "upon receipt of the recommendation from the QMHP (qualified mental health psychiatrist), the deputy warden shall review the prisoner's institutional record," and "if the deputy warden concurs with the recommendation, s/he shall ensure that the prisoner is released from segregation and transferred as recommended as soon as possible . . . ." (*Id.*)

Further, Plaintiff alleges that "his placement in long-term segregation was not authorized by the Director(s) of the MDOC, and that this was done in retaliation against Plaintiff for writing a grievance against the ICF Defendants for placing him in segregation." (*Id.*, PageID.6.) Plaintiff also alleges that on October 25, 2022, "all of the named Defendants from ICF and MBP violated [his] Eighth Amendment right[s] . . . through deliberate indifference to his serious mental and medical needs by knowingly subjecting him to long-term segregation" when "his mental health disagnoses suggested any long-term segregation would deteriorate his mental health." (*Id.*) Plaintiff states that "after his 10-days detention period was over, he should have been sent to a Start Program, RTP (Residential Treatment Program), or simply released back into general population." (*Id.*) As relief, Plaintiff seeks monetary damages and injunctive relief. (*Id.*, PageID.9.)

---

[3] The Court notes that in the complaint, Plaintiff references attaching the "CSJ-33 misconduct sanction assessment form," as well as several other exhibits to the complaint. (*See, e.g.*, Compl., ECF No. 1, PageID.5.) When Plaintiff submitted his complaint to the Court, he did not attach any exhibits to the complaint; however, he describes these documents and their contents in the complaint.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

Plaintiff sues Defendants in their individual and official capacities. (*See* Compl., ECF No. 1, PageID.2–3.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages, as well as injunctive relief. (Compl., ECF No. 1, PageID.9.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Furthermore, although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that

the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

Here, Plaintiff asks that the Court "order the MDOC to immediately place the Plaintiff in general population." (Compl., ECF No. 1, PageID.9.) However, Plaintiff's complaint is about his past placement in segregation starting on October 12, 2022, and continuing for 7.5 months. (*See id.*, PageID.4.) Plaintiff's complaint sets forth no allegations or claims regarding Plaintiff's present confinement, and Plaintiff does not allege that the activities alleged in the complaint are likely to occur to him again. Instead, his allegations relate solely to past harm, not future risk of harm. As such, Plaintiff fails to allege any facts to show that he seeks prospective injunctive relief that is related to his current claims.

Therefore, for these reasons, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief can be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

### B.    Individual Capacity Claims

#### 1.    Defendants Cambell, Schroeder, Davids, Johnson, Nurkala, Green, Cassel, Luther, and Heinritz

As explained below, Plaintiff fails to allege sufficient facts showing how Defendants Cambell, Schroeder, Davids, Johnson, Nurkala, Green, Cassel, Luther, and Heinritz were personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not name Defendants Cambell, Schroeder, Davids, Johnson, Nurkala, Green, Cassel, Luther, and Heinritz in the body of his complaint.[4] (*See generally* Compl., ECF

---

[4] The Court notes that in the complaint, Plaintiff alleges that "his long-term segregation approval form was not properly completed" because "[t]here was no signature present on the form and the approval box was not checked," and Plaintiff claims that this means "the Deputy Director(s) were not properly notified of Plaintiff's placement in long-term segregation." (Compl., ECF No. 1, PageID.4.) It is not clear to whom Plaintiff is referring when he references "the Deputy

9

No. 1.) The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). And, "[s]ummary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that

---

Director(s)"; however, even generously construing Plaintiff's complaint as referring to Defendant Cambell, who is identified by Plaintiff as an MDOC Assistant Deputy Director, Plaintiff fails to state any claim against Campbell because Plaintiff fails to attribute any active unconstitutional conduct to Cambell. Instead, Plaintiff claims that the Deputy Director was "not properly notified of Plaintiff's placement in long-term segregation," meaning the Deputy Director had no knowledge of Plaintiff's placement in long-term segregation. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. With respect to Defendant "Deputy Director," Plaintiff has failed to allege any facts to suggest that this Defendant engaged in any active conduct, let alone active unconstitutional conduct.

Similarly, without identifying any Defendant by name, in his complaint, Plaintiff states that "upon receipt of the recommendation from the QMHP (qualified mental health psychiatrist), the deputy warden shall review the prisoner's institutional record," and "if the deputy warden concurs with the recommendation, s/he shall ensure that the prisoner is released from segregation and transferred as recommended as soon as possible . . . ." (Compl., ECF No. 1, PageID.5.) It is not clear from the complaint if Plaintiff's reference to "the deputy warden" is a reference to a specific individual or simply an explanation of the relevant MDOC policy. Regardless, even generously construing Plaintiff's complaint as referring to Defendant Cassel, who is identified by Plaintiff as an Assistant Deputy Warden at ICF, as explained below, Plaintiff fails to state any claim against Defendant Cassel. Specifically, Plaintiff alleges that the Deputy Warden must review a "prisoner's institutional record" and the mental health professional's recommendation, but Plaintiff's allegations do not suggest that the Deputy Warden must agree with the mental health professional's recommendation. Even if Defendant Cassel was the individual who reviewed Plaintiff's records and determined that Plaintiff would be held in segregation beyond the initial 10-day sanctions period, Plaintiff alleges no facts to suggest that the Deputy Warden had any further involvement in the matter. That is, Plaintiff does not allege that the Deputy Warden had any knowledge of, or involvement in, Plaintiff's *continued* placement in segregation for the entire 7.5 month period. Under these circumstances, Plaintiff fails to allege any facts to show that the Deputy Warden's involvement in Plaintiff's *initial* placement in segregation violated Plaintiff's constitutional rights. *See, e.g.*, *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (discussing that placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society" (citation omitted)); *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).

each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Plaintiff refers only to "the named Defendants," "all of the named Defendants from ICF and MBP," and "the ICF Defendants" in his complaint, and this is insufficient to show that Defendants Cambell, Schroeder, Davids, Johnson, Nurkala, Green, Cassel, Luther, and Heinritz each were personally involved in the alleged violations of Plaintiff's constitutional rights. And, Plaintiff's claims against Defendants Cambell, Schroeder, Davids, Johnson, Nurkala, Green, Cassel, Luther, and Heinritz fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendants Cambell, Schroeder, Davids, Johnson, Nurkala, Green, Cassel, Luther, and Heinritz liable due to their supervisory positions, government officials, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

11

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants Cambell, Schroeder, Davids, Johnson, Nurkala, Green, Cassel, Luther, and Heinritz encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in their conduct.

Accordingly, for these reasons, all of Plaintiff's claims against Defendants Cambell, Schroeder, Davids, Johnson, Nurkala, Green, Cassel, Luther, and Heinritz are subject to dismissal for failure to state a claim.

### 2. Defendant Maranka

As to Defendant Maranka, identified by Plaintiff as the mental health unit chief at ICF, Defendant Maranka is the only Defendant identified by name in the body of the complaint. (*See* Compl., ECF No. 1, PageID.5.) Plaintiff's only allegation against Defendant Maranka is that on "the CSJ-33 misconduct sanction assessment form," Defendant Maranka "checked 'Yes'" to indicate that Plaintiff's "mental health [would] be [a]ffected by any of the available misconduct sanctions that may be imposed," and Defendant Maranka recommended the imposition of the loss of privileges sanction, which entails the loss of certain privileges for a period of time, noting that "long-term segregation may lead to increase in mental health symptoms." (*Id.*) Plaintiff claims that Defendant Maranka's actions violated Plaintiff's rights under the Eighth Amendment. (*See id.*, PageID.6.)

In order for a prisoner to state an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. And, for a medical care-related claim, to satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious, *Farmer*, 511 U.S. at 834. The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

Here, Plaintiff's own allegations show that Defendant Maranka recommended that Plaintiff *not* be placed in long-term segregation. (Compl., ECF No. 1, PageID.5) Plaintiff's allegations suggest that this recommendation was disregarded; however, he alleges no facts to suggest that Defendant Maranka had any further involvement in the matter besides Maranka's initial recommendation that Plaintiff *not* be placed in long-term segregation. (*Id.*) Under these circumstances, Plaintiff fails to explain, and the Court fails to discern, how Defendant Maranka's

13

recommendation that Plaintiff not be placed in long-term segregation violated Plaintiff's constitutional rights.[5]

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated:  July 24, 2025                                /s/ *Maarten Vermaat*
                                                                Maarten Vermaat
                                                                United States Magistrate Judge

---

[5] If Plaintiff had raised Fourteenth Amendment due process claims in this action, the Court would reach the same conclusion as to Defendant Maranka. Specifically, Plaintiff alleges that Defendant Maranka recommended that Plaintiff not be placed in long-term segregation. (Compl., ECF No. 1, PageID.5.) Plaintiff's allegations suggest that this recommendation was not followed; however, besides Defendant Maranka's recommendation, Plaintiff fails to show that Defendant Maranka had any other involvement in Plaintiff's initial placement, and continued detention, in segregation. As such, Plaintiff fails to allege any facts to show that Defendant Maranka violated Plaintiff's due process rights by recommending that Plaintiff not be placed in long-term segregation.